IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| FLINT RIVERKEEPER, INC., *et al.*, | : |
| | : |
| Plaintiffs, | : |
| | : No. 5:16-CV-435 (CAR) |
| v. | : |
| | : |
| SOUTHERN MILLS, INC., d/b/a | : |
| TENCATE PROTECTIVE FABRICS, | : |
| | : |
| Defendant. | : |
| | : |

## ORDER ON MOTION TO DISMISS

Plaintiffs Flint Riverkeeper, Inc., Jere Michael Cox, Shelby Cox Moore, Granville Cliff Moore, and Sean Draime claim Defendant Southern Mills's discharge of industrial wastewater violates the Federal Water Pollution Control Act of 1972 (Clean Water Act, or CWA), 33 U.S.C. § 1251, *et seq.*, and Georgia law. Before the Court is Defendant's Motion to Dismiss. The Court has carefully considered the parties' arguments and the relevant law, and finds Plaintiffs' CWA claim, and by extension Plaintiffs' state-law claims, are properly before this Court under Rules 12(b)(1) and 12(b)(6). Thus, the Court **DENIES** Defendant's Motion to Dismiss [Doc. 11]. The Court also **DENIES** Plaintiffs' Motions for Hearing and Leave to File Surreply [Docs. 15, 16] as unnecessary.

## BACKGROUND

In this suit, Plaintiffs allege Defendant is violating the CWA and certain state laws by unlawfully discharging polluted industrial wastewater into tributaries of the Flint River, both overland and via groundwater with a direct hydrological connection to surface water. Defendant seeks dismissal of Plaintiffs' CWA claim, contending the Court lacks subject matter jurisdiction, and Plaintiffs fail to state a claim under the CWA. Upon dismissal, Defendant then asks the Court to decline supplemental jurisdiction over Plaintiffs' state-law claims. For purposes of this Motion, the Court accepts all factual allegations in Plaintiffs' Amended Complaint as true and construes them in the light most favorable to Plaintiff.

### **Defendant's Land Application System**

Defendant manufactures protective fabrics at Plant Ray, a dyeing and finishing facility in Molena, Georgia. Defendant utilizes a land application system (LAS) to treat industrial wastewater generated at Plant Ray. In an LAS, a manufacturer irrigates pretreated wastewater on the ground, allowing vegetation and soil bacteria to break down pollutants.[1] Defendant's LAS consists of three spray fields, where Defendant discharges its wastewater through a series of spray heads.[2]

Because Defendant sprays excess amounts of industrial wastewater containing high levels of sodium, the spray fields have lost soil structure and become

---

[1] Complaint, ¶ 63 [Doc. 1, p. 10].
[2] *Id.* at ¶ 94 [Doc. 1, p. 14].

oversaturated.³ Consequently, wastewater leaves the spray fields both over the land and under the land. The overland wastewater discharges occur during precipitation events, when storm water washes Defendant's wastewater from the spray fields over the land, along ditches and other channels on Defendant's property, and directly into surface waters.⁴ The underground wastewater discharges occur when Defendant's wastewater seeps underneath the spray fields and enters surface waters indirectly through groundwaters that have a direct hydrological connection to surface waters.⁵ As a result, Defendant's wastewater enters tributaries of the Flint River by both overland and underground routes.⁶

Plaintiff Flint Riverkeeper is a Georgia non-profit corporation dedicated to restoring and preserving the habitat along the Flint River. Plaintiffs Cox, Shelby Moore, Granville Moore, and Draime own real property adjacent to various Flint River tributaries. Upon sampling the water on their properties, Plaintiffs discovered high levels of sodium, calcium, potassium, nitrates, and other chemicals.⁷

**Defendant's Permits**

Defendant possesses two state-issued permits relevant to this case: (1) a National Pollutant Discharge Elimination System (NPDES) permit; and (2) an LAS permit. An

---

³ *Id.* at ¶ 134 [Doc. 1, p. 19].
⁴ *Id.* at ¶¶ 134, 138, 141, 155, 156 [Doc. 1, pp. 19, 22]. Surface waters are waters on the surface of the Earth, such as rivers, lakes, and oceans. In contrast, groundwaters flow beneath the Earth's surface through aquifers or other permeable rock.
⁵ *Id.* at ¶¶ 157-58 [Doc. 1, pp. 22-23].
⁶ *Id.* at ¶¶ 142-44 [Doc. 1, p. 20].
⁷ *Id.* at ¶¶ 145 [Doc. 1, p. 20].

NPDES permit allows the discharge of specified wastewater otherwise prohibited by the CWA.[8] Defendant maintains an NPDES permit authorizing the discharge of storm water mixed with certain pollutants from its LAS fields.[9] Defendant's LAS permit allows Defendant to operate its LAS under Georgia law provided Defendant complies with various effluent limitations and monitoring requirements.[10]

**Federal Lawsuit**

In accordance with the CWA, Plaintiffs mailed Defendant a Notice of Intent to Sue if Defendant continued to discharge wastewater from its LAS (the "Notice Letter").[11] Because Defendant continued its discharge, Plaintiffs filed suit on September 30, 2016, raising a claim under the CWA and claims under Georgia law for trespass, nuisance, and negligence.[12] Plaintiffs seek damages, civil penalties under the CWA, and a permanent injunction requiring Defendant to comply with the CWA. Defendant's Motion to Dismiss is now ripe for ruling.

## DISCUSSION

The CWA prohibits the discharge of any pollutant into "navigable waters"

---

[8] The CWA authorizes the EPA to issue NPDES permits or to delegate this authority to the states. 33 U.S.C. § 1342. In Georgia, the Department of Natural Resources, Environmental Protection Division (EPD) has authority to issue NPDES permits. Revision of the Georgia National Pollutant Discharge Elimination System (NPDES) Program to Issue General Permits, 56 Fed. Reg. 7,382-01 (Feb. 22, 1991).
[9] NPDES Permit at §§ 1.1.2.1 [Doc. 11-2, pp. 6].
[10] Land Application System Permit [Doc. 11-8, pp. 3-13].
[11] Notice of Intent to Sue [Doc. 1-2].
[12] Complaint, ¶ 12 [Doc. 1, p. 3].

except as authorized by specified sections of the Act.¹³ To enforce this prohibition, the CWA enables citizens to file a civil action against any person violating the Act.¹⁴ Defendant contends Plaintiffs' CWA claim must be dismissed for lack of subject matter jurisdiction and failure to state a claim.¹⁵ The Court discusses each in turn below.

**A. Lack of Subject Matter Jurisdiction**

Defendant contends the Court must dismiss Plaintiffs' CWA claim for lack of subject matter jurisdiction because Plaintiffs fail to allege ongoing violations of the CWA. The Court disagrees.

1. Legal Standard

District courts are courts of limited jurisdiction and may not hear a case where the court lacks jurisdiction over the subject matter of the dispute.¹⁶ The party bringing the claim bears the burden of establishing subject matter jurisdiction.¹⁷ A motion to dismiss for lack of subject matter jurisdiction may be based on either a facial or factual challenge to the complaint.¹⁸ Facial attacks require the court to accept the allegations set forth by plaintiff as true and determine from the face of the complaint whether "the

---

¹³ *Woods Knoll, LLC v. City of Lincoln, Ala.*, 548 F. App'x 577, 579 (11th Cir. 2013) (citing 33 U.S.C. § 1311(a)).
¹⁴ *Black Warrior Riverkeeper, Inc. v. Black Warrior Minerals, Inc.*, 734 F.3d 1297, 1301 (11th Cir. 2013).
¹⁵ Defendant also contends the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims if the Court dismisses the CWA claim. Because the Court does not dismiss the CWA claim, it possesses supplemental jurisdiction over the state-law claims.
¹⁶ *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (11th Cir. 2005); *see also* Fed.R.Civ.P. 12(b)(1).
¹⁷ *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005).
¹⁸ *See McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

plaintiff has sufficiently alleged a basis of subject matter jurisdiction."[19] "In this sense, a facial challenge equips a plaintiff with safeguards similar to those afforded by a Rule 12(b)(6) motion for failure to state a claim and limits the court to a comparable scope of review."[20] "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."[21]

2. Analysis

The CWA confers jurisdiction over citizen suits "for ongoing or continuous violations, not for those that are wholly in the past."[22] Thus, for jurisdictional purposes, the plaintiff must allege "a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future."[23] "[A] good-faith allegation of violations that continued at the time suit was filed is sufficient for jurisdictional purposes."[24]

---

[19] *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980), *cert. denied*, 449 U.S. 953 (1980)). "Factual attacks, on the other hand, challenge the existence of subject matter in fact irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id*. (internal quotation marks omitted).
[20] *Bailey v. Wells Fargo Bank, N.A.*, 174 F.Supp.3d 1359, 1361 (N.D. Ga. 2016) (citing *McElmurray*, 501 F.3d at 1251).
[21] Fed.R.Civ.P. 12(h)(3).
[22] *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1009 (11th Cir. 2004) (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56-63 (1987)). *See also Gwaltney*, 484 U.S. at 64-65 (explaining requirement of ongoing violation is jurisdictional).
[23] *Gwaltney*, 484 U.S. at 57.
[24] *Atlantic States Legal Found., Inc., v. Tyson Foods, Inc.*, 897 F.2d 1128, 1133 (11th Cir. 1990) (citing *Gwaltney*, 484 U.S. at 64). *See also Gwaltney*, 484 U.S. at 65 (explaining "Rule 11 of the Federal Rules of Civil Procedure . . . adequately protects defendants from frivolous allegations").

Here, Plaintiffs' allegations easily satisfy this "low standard."[25] In the Complaint, Plaintiffs allege Defendant's "LAS is overburdened and oversaturated" with polluted wastewater, causing "loss of soil structure and increased runoff," and thus Defendant's unpermitted discharges of wastewater "are continuous or intermittent [or] have the potential to recur."[26] Although Defendant argues it ceased discharging polluted wastewater after receiving Plaintiffs' Notice Letter, Plaintiffs clearly allege Defendant "has refused and failed to cease the violations of the CWA alleged in the Notice Letter."[27] Accepting these allegations as true for purposes of this Motion, the Court finds Plaintiffs have established subject matter jurisdiction.

**B. Failure to State a Claim**

Defendant also contends the Court must dismiss Plaintiffs' Complaint for failure to adequately state a CWA claim.

1. Legal Standard

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[28] Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause

---

[25] *City of Mountain Park, GA v. Lakeside at Ansley*, LLC, 560 F. Supp. 2d 1288, 1297 (N.D. Ga. 2008).
[26] Complaint, ¶¶ 134-35, 160 [Doc. 1, pp. 19, 23].
[27] *Id*. at ¶ 12 [Doc. 1, p. 3].
[28] Fed. R. Civ. P. 8(a)(2).

7

of action will not do."²⁹ In the same vein, a complaint may not rest on "naked assertions devoid of further factual enhancement."³⁰ "Factual allegations must be enough to raise a right to relief above the speculative level."³¹

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint.³² To avoid dismissal pursuant to Rule 12(b)(6) of the Federal Rules, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."³³ A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."³⁴ The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.³⁵

2. Analysis

To establish a CWA violation, a citizen-plaintiff must prove the defendant (1) discharges a pollutant (2) into "navigable waters" (3) from a point source (4) without an NPDES permit.³⁶ Here, Defendant seeks dismissal because (1) its discharge of pollutants into groundwaters does not constitute discharge into "navigable waters"; (2)

---

²⁹ *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
³⁰ *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).
³¹ *Twombly*, 550 U.S. at 555.
³² *McElmurray*, 501 F.3d at 1251.
³³ *Iqbal*, 556 U.S. at 678 (internal quotation omitted).
³⁴ *Id.*
³⁵ *Twombly*, 550 U.S. at 556.
³⁶ *Parker*, 386 F.3d at 1008.

its LAS is not a point source; and (3) it is operating in accordance with its NPDES permit.[37] The Court addresses each argument below.

**a. Navigable Waters**

Plaintiffs allege Defendant's wastewater discharge enters Flint River tributaries by both overland and underground routes. Defendant does not challenge the sufficiency of Plaintiffs' allegations that the overland discharge enters "navigable waters." However, Defendant does seek dismissal of Plaintiffs' claim regarding groundwater, arguing its discharge of pollutants into groundwater does not constitute discharge into "navigable waters" under the CWA. The Court disagrees.

The CWA defines "navigable waters" as "waters of the United States."[38] In a plurality opinion, the Supreme Court has explained "waters of the United States" includes only "relatively permanent, standing or continuously flowing bodies of water forming geographic features," such as streams, oceans, rivers, and lakes.[39]

---

[37] Defendant originally sought dismissal for lack of subject matter jurisdiction. Defendant, however, challenges elements of Plaintiffs' claim, and thus Defendant's arguments fall under Rule 12(b)(6) rather than 12(b)(1). *See Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1269 (11th Cir. 2009) (explaining "relief from a complaint that fails to sufficiently plead the elements of a [federal] claim should be raised in a motion filed under Rule 12(b)(6), rather than 12(b)(1)"), *overruled on other grounds by Mohamad v. Palestinian Authority*, 566 U.S. 449 (2012).
[38] 33 U.S.C. § 1311(a) (prohibiting the discharge of any pollutant); § 1362(12)(A) (defining "discharge of a pollutant" as the addition of a pollutant into navigable waters); 33 U.S.C. § 1362(7) (defining "navigable waters").
[39] *Rapanos v. United States*, 547 U.S. 715, 739 (2006) (plurality opinion).

In this Circuit, groundwaters do not constitute "navigable waters" under the CWA.[40] Plaintiffs, however, do not simply allege Defendant discharges pollutants into groundwaters. Plaintiffs allege Defendant discharges pollutants from its LAS that seep underground and enter tributaries of the Flint River "<u>via</u> groundwater <u>with a direct hydrological connection</u>" to surface waters.[41] Hydrologically connected groundwater serves as a conduit between a point source and "navigable waters."[42]

The Eleventh Circuit has not addressed whether the CWA prohibits the discharge of pollutants that reach "navigable waters" through hydrologically connected groundwaters.[43] A majority of district courts addressing this issue, however, has concluded the CWA prohibits such discharge.[44] As one district court explained,

---

[40] *Exxon Corp. v. Train*, 554 F.2d 1310, 1322 (5th Cir. 1977) (explaining "the evidence is so strong Congress did not mean to substitute federal authority over groundwaters for state authority that the [EPA's] construction . . . must give way"); *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting as binding precedent all cases decided by the former Fifth Circuit before October 1, 1981).
[41] Complaint, ¶¶ 157-58 [Doc. 1, p. 22] (emphasis added).
[42] *Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas*, LLC, 141 F. Supp. 3d 428, 445 (M.D.N.C. 2015).
[43] *Exxon Corp.*, 554 F.2d at 1312 n.1 (noting, "[w]e mean to express no opinion on what the result would be" if pollutants "migrated" from groundwaters back into surface waters).
[44] *See Sierra Club v. Virginia Elec. and Power Co.*, 145 F. Supp. 3d 601, 606-07 (E.D. Va. 2015); *Yadkin Riverkeeper*, 141 F. Supp. 3d at 443-46; *Ohio Valley Envtl. Coal., Inc. v. Pocahontas Land Corp.*, No. 3:14-CV-11333; 2015 WL 2144905, at *8 (S.D.W. Va. May 7, 2015); *Hawaii Wildlife Fund v. Cnty. of Maui*, 24 F. Supp. 3d 980, 993-98 (D. Haw. 2014); *Northwest Envtl. Defense Ctr. v. Grabhorn, Inc.*, No. CV-08-548-ST; 2009 WL 3672895, at *9-11 (D. Or. Oct. 30, 2009); *Greater Yellowstone Coal. v. Larson*, 641 F. Supp. 2d 1120, 1138 (D. Idaho 2009); *Northern Cal. River Watch v. Mercer Fraser Co.*, No. C-04-4620 SC, 2005 WL 2122052, at *2-4 (N.D. Cal. Sept. 1, 2005); *Williams Pipe Line Co. v. Bayer Corp.*, 964 F. Supp. 1300, 1319-20 (S.D. Iowa 1997); *Sierra Club v. Colorado Refining Co.*, 838 F. Supp. 1428, 1432-34 (D. Colo. 1993). *See also Rice v. Harken Exploration Co.*, 250 F.3d 264, 269-72 (5th Cir. 2001) (holding "generalized assertion" of "remote, gradual, natural seepage" is insufficient but leaving open the possibility the CWA applies where "a close, direct, and proximate link" exists between groundwater and surface water). *But see Village of Oconomowoc Lake v. Dayton Hudson Corp.*, 24 F.3d 962, 965-66 (7th Cir. 1994) (holding the mere "possibility of a hydrological connection" is not a "sufficient ground of regulation"); *Cape Fear River Watch, Inc. v. Duke Energy Progress, Inc.*, 25 F. Supp. 3d 798, 809-10 (E.D.N.C. 2014).

> [I]t would hardly make sense for the CWA to encompass a polluter who discharges pollutants via a pipe running from the factory directly to the riverbank, but not a polluter who dumps the same pollutants . . . some distance short of the river and then allows the pollutants to seep into the river via the groundwater.[45]

Moreover, this view is consistent with the EPA's regulatory pronouncements interpreting "the Clean Water Act to apply to discharges of pollutants from a point source via groundwater that has a direct hydrologic connection to surface water."[46] Accordingly, the Court finds Plaintiffs sufficiently state a claim that Defendant discharges pollutants into "navigable waters" via hydrologically connected groundwater.

**b. Point Source**

Next, Defendant contends the Court must dismiss Plaintiffs' CWA claim as to both overland and underground discharges because Plaintiffs fail to plead Defendant discharges wastewater from a point source. Again, the Court disagrees.

---

[45] *Northern Cal. River Watch*, 2005 WL 2122052, at *2.
[46] Amendments to the Water Quality Standards Regulations That Pertain to Standards on Indian Reservations, Final Rule, 56 Fed. Reg. 64876-01, 64892 (Dec. 12, 1991) (to be codified at 40 C.F.R. pt. 131). *See also* National Pollutant Discharge Elimination System Permit Regulation and Effluent Limitations Guidelines and Standards for Concentrated Animal Feeding Operations, Proposed Rule, 66 Fed. Reg. 2960-01, 3015 (Jan. 12, 2001) (to be codified at 40 C.F.R. pts. 122 and 412); Revised National Pollutant Discharge Elimination System Permit Regulation and Effluent Limitations Guidelines for Concentrated Animal Feeding Operations in Response to the Waterkeeper, 73 Fed. Reg. 70418-01, 70420 (Nov. 20, 2008) (to be codified at 40 C.F.R. pts. 9, 122, and 412) (explaining "nothing in the 2003 rule was to be construed to expand, diminish, or otherwise affect the jurisdiction of the CWA over discharges to surface water via groundwater that has a direct hydrologic connection to surface water").

A point source is "any discernable, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, [or] container . . . from which pollutants are or may be discharged."[47] A nonpoint source, in contrast, refers to pollution arising "from many dispersed activities over large areas" that is "not traceable to any single discrete source."[48] In the Eleventh Circuit, courts "interpret the term 'point source' broadly."[49]

Plaintiffs' allegations clearly suffice to state a claim that Defendant discharges wastewater overland from a point source. Plaintiffs allege Defendant's overland wastewater enters tributaries of the Flint River "via ditches, runnels, seeps, and other discrete conveyances" on Defendant's property.[50] A point source "need not be the original source of [a] pollutant; it need only convey the pollutant to navigable waters."[51]

Plaintiffs' allegations also suffice to state a claim that Defendant discharges wastewater underground from a point source. Plaintiffs argue Defendant's LAS is a point source; Defendant disagrees. Although the Eleventh Circuit has not addressed

---

[47] 33 U.S.C. § 1362(14). *See Parker*, 386 F.3d at 1009 (holding pile of industrial debris and construction equipment are point sources); *Driscoll v. Adams*, 181 F.3d 1285, 1291 (11th Cir. 1999) (holding culverts, dams, and pipes used to channel storm water runoff are point sources).
[48] *Ecological Rights Found. v. Pacific Gas and Elec. Co.*, 713 F.3d 502, 508 (9th Cir. 2013) (explaining "[t]he most common example of nonpoint source pollution is the residue left on roadways by automobiles").
[49] *Parker*, 386 F.3d at 1009 (citing *Dague v. City of Burlington*, 935 F.2d 1343, 1354-55 (2d Cir. 1991)) (explaining "[t]he concept of a point source was designed to further [the CWA's] scheme by embracing the broadest possible definition of any identifiable conveyance from which pollutants might enter waters of the United States").
[50] Complaint, ¶¶ 155-56 [Doc. 1, p. 22]. A runnel is a small channel.
[51] *South Fla. Water Management Dist. v. Miccosukee Tribe of Indians*, 541 U.S. 95, 105 (2004) (internal quotations omitted). *See also* 33 U.S.C. § 1362(14); *Concerned Area Residents for Env't v. Southview Farm*, 34 F.3d 114, 119 (2d Cir. 1994) (holding ditch or depression in the swale of a field "collected and channelized" pollutants and thus was a point source).

whether an LAS is a point source, district courts in other jurisdictions have found such systems are point sources.[52] Plaintiffs also allege Defendant sprays wastewater into its LAS fields through a series of spray heads.[53] A spray apparatus can be a discernable, confined, and discrete conveyance, and thus other district courts have found spray apparatuses are point sources.[54] The Court finds these cases persuasive. Accordingly, Plaintiffs sufficiently state a claim that Defendant discharges wastewater into groundwater from a point source.

**c. NPDES Permit**

Finally, Defendant contends the Court must dismiss Plaintiffs' CWA claim because Defendant possesses an NPDES permit authorizing its discharge of wastewater. However, Plaintiffs' allegations that Defendant discharges wastewater in a manner not authorized by its NPDES permit sufficiently state a claim under the CWA.[55]

---

[52] *See, e.g., United States v. Oxford Royal Mushroom Prod., Inc.*, 487 F. Supp. 852, 854 (E.D. Pa. 1980) (declining to hold as a matter of law that defendant's spray irrigation system is not a point source); *Reynolds v. Rick's Mushroom Serv., Inc.*, 246 F. Supp. 2d 449, 457-58 (E.D. Pa. 2003) (holding defendant's LAS "is clearly the kind of system that Congress intended to include within the definition of 'point source'").

[53] Complaint, ¶ 94 [Doc. 1, p. 14].

[54] *Peconic Baykeeper, Inc. v. Suffolk Cnty.*, 600 F.3d 180, 188-89 (2d Cir. 2010) (holding spray apparatus attached to trucks and helicopters is a point source); *Concerned Area Residents for Env't*, 34 F.3d at 119 (holding manure-spreading vehicles are point sources).

[55] *Driscoll*, 181 F.3d at 1289-90 (quoting *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1524 (11th Cir. 1996)) (explaining the CWA "absolutely prohibits the discharge of any pollutant by any person, unless the discharge is made according to the terms of [an NPDES] permit"). *See also Swartz v. Beach*, 229 F. Supp. 2d 1239, 1268-69 (D. Wyo. 2002) (holding defendant's "argument that it is protected by the 'permit shield' provisions of the CWA [is] without merit because Plaintiff has alleged that [defendant] violated its NPDES permit").

Although Defendant's NPDES permit authorizes the discharge of storm water mixed with certain pollutants,[56] it does not authorize the discharge of storm water mixed with "process wastewater" created during manufacturing.[57] In the Complaint, Plaintiffs allege Defendant's LAS spray fields are "overburdened and oversaturated" with "polluted industrial wastewater," and thus storm water washes the polluted wastewater from Defendant's spray fields overland into tributaries of the Flint River.[58] From these allegations, it is reasonable to infer these wastewater discharges consist of "process wastewater" mixed with storm water, in violation of the NPDES permit.[59] Indeed, Plaintiffs allege they have documented such wastewater discharges through water quality sampling.[60]

## C. *Burford* Abstention

Alternative to dismissal, Defendant contends the Court should abstain from exercising jurisdiction over this case in accordance with *Burford v. Sun Oil Co.*[61] because the relief Plaintiffs seek would effectively nullify Defendant's state-issued LAS permit.

---

[56] For example, the permit authorizes the discharge of storm water mixed with landscaping water containing pesticides, herbicides, and fertilizer. NPDES Permit at § 1.1.3.1 [Doc. 11-2, p. 7].
[57] NPDES Permit at §§ 1.1.2.1, 1.1.4 [Doc. 11-2, pp. 6, 8]; 40 C.F.R. § 122.2 (2015) (defining "process wastewater" as "any water which, during manufacturing or processing, comes into direct contact with or results from the production or use of any raw material, intermediate product, finished product, byproduct, or waste product"). *See also* Defendant's Reply Br. [Doc. 14, p. 8] (conceding the NPDES permit "does not authorize the discharge of storm water that is commingled with industrial water").
[58] Complaint, ¶¶ 134, 138, 141, 155, 156 [Doc. 1, pp. 19, 22] (alleging "direct overland . . . wet weather discharges of still polluted industrial wastewater").
[59] *See Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248-49 (11th Cir. 2005) (explaining courts "must make reasonable inferences in [p]laintiffs' favor" on motion to dismiss for failure to state a claim).
[60] Complaint, ¶¶ 142-43 [Doc. 1, p. 20].
[61] 319 U.S. 315 (1943).

The Court, however, finds *Burford* abstention does not apply to citizen suits brought under the CWA.

Abstention constitutes an "extraordinary and narrow exception" to district courts' "virtually unflagging obligation . . . to exercise the jurisdiction given them."[62] Under *Burford*, federal courts may abstain from exercising jurisdiction over cases that primarily concern issues of state law, provided adequate and timely state court review is available.[63] *Burford* abstention applies (1) when difficult questions of state law concerning policy problems of substantial public import transcend the case at bar; or (2) where federal judicial review would disrupt state efforts to establish a coherent policy as to a matter of substantial public concern.[64] Thus, *Burford* abstention "protect[s] complex state administrative processes from undue federal interference."[65]

That Defendant may operate its LAS in accordance with its state-issued LAS permit is no defense to a CWA suit.[66] Defendant's LAS permit expressly authorizes wastewater discharges to groundwater, provided groundwater leaving the LAS does not exceed certain contaminant levels.[67] In this action, however, Plaintiffs claim Defendant's wastewater discharges to groundwater violate the CWA.

---

[62] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Allegheny Cnty. v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959).
[63] *Sierra Club v. Va. Elec. and Power Co.*, 145 F. Supp. 3d 601, 608 (E.D. Va. 2015).
[64] *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989).
[65] *Id.* at 362.
[66] *See also Driscoll*, 181 F.3d at 1289-90 (11th Cir. 1999) (quoting *Hughey*, 78 F.3d at 1524).
[67] Land Application System Permit, C.3 [Doc. 11-8, p. 11]. *See also* Ga. Comp. R. & Regs. 391-3-6-.11(2)(b) (explaining LAS results in seepage of pollutants into soil and groundwater).

Although the Eleventh Circuit has not addressed whether *Burford* abstention applies in these circumstances, the Court agrees with those district courts finding *Burford* abstention does not apply to citizen suits brought under the CWA.[68] The CWA "provides for the enforcement of federal standards through the combined efforts of state agencies, federal agencies, and private citizens" and thus "contemplates citizen suits as a supplement to state government action."[69] To abstain from exercising jurisdiction over Plaintiffs' claim "would essentially deprive them of the statutory right that Congress saw fit to confer upon them."[70] The Court therefore declines to abstain from exercising its jurisdiction in this case.

## CONCLUSION

For the reasons set forth above, the Court **HEREBY DENIES** Defendant's Motion to Dismiss [Doc. 11], and **DENIES** Plaintiffs' Motions for Hearing and Leave to File Surreply [Docs. 15, 16] as unnecessary.

---

[68] *See Oregon State Pub. Interest Research Grp., Inc. v. Pacific Coast Seafoods Co.*, 341 F. Supp. 2d 1170, 1177-78 (D. Or. 2004); *Cmty. of Cambridge Envtl. Health and Cmty. Dev. Group v. City of Cambridge*, 115 F. Supp. 2d 550, 560-61 (D. Md. 2000); *Culbertson v. Coats Am. Inc.*, 913 F. Supp. 1572, 1578 (N.D. Ga. 1995); *Nat. Res. Def. Council, Inc. v. Outboard Marine Corp.*, 692 F. Supp. 801, 810 (N.D. Ill. 1988); *Student Pub. Interest Research Grp. of N.J., Inc. v. P.D. Oil & Chem. Storage, Inc.*, 627 F. Supp. 1074, 1085 (D.N.J. 1986); *Brewer v. City of Bristol, Tenn.*, 577 F. Supp. 519, 524 (E.D. Tenn. 1983). *But see Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 480-81 (6th Cir. 2004) (holding *Burford* abstention applies to citizens suits under the Clean Air Act).

[69] *Culbertson*, 913 F. Supp. at 1578 (italics omitted).

[70] *Long Island Soundkeeper Fund, Inc. v. New York City Dept. of Envtl. Prot.*, 27 F. Supp. 2d 380, 385 (E.D.N.Y. 1998). *See also Interfaith Cmty. Org., Inc. v. PPG Indus., Inc.*, 702 F. Supp. 2d 295, 314 (D.N.J. 2010) (explaining, in RCRA context, citizen suits "in some sense" attack state agency actions and standards, but "this [is] the very nature of a[] citizen suit").

**SO ORDERED,** this 12th day of May, 2017.

S/ C. Ashley Royal  
C. ASHLEY ROYAL, SENIOR JUDGE  
UNITED STATES DISTRICT COURT